The next case is Mihalik v. United States of America. Good morning, Your Honors. Thank you for this opportunity to present oral arguments on what I think is a very complex case. At first glance, it does not appear to be that complicated, but as we dove into the facts and the law, it does seem to be a little more complicated than at first glance. The nutshell is that Norma Mihalik is trying to obtain a refund for tax that was paid on income, which ultimately found its way to her that she had to pay back. This was a claim of right case, and again, she is trying to get a refund on tax that she paid for income that she has not kept. The facts of this case were, just very briefly, she was married in 1978. Counsel, I think we've got the basic facts. Can I direct you to the language of 1341A1 and ask you, the complicating factor here seems to me to be that they filed a joint return, but who was the taxpayer insofar as the $600,000 that was included on that return was concerned? Well, Your Honor, that $600,000, the joint return, the person who was allegedly taking too much income was Michael Blusow, the ex-husband of the appellant Norma Mihalik. All right, so why doesn't your client lose on that basis alone? Because the statute requires that an item be included in the gross income of the taxpayer, and you just said it wasn't. The reason, Your Honor, this is different from some of the other cases. Norma Mihalik actually ended up paying a lot of her own money back to cover this income situation. I'm fully aware of that, and that may have been a loss in a future year, but the fact that she settled with her husband doesn't make the $600,000 at the time of the prior year's return gross income of hers, does it? How does something that wasn't gross income when the return was filed become gross income later? Well, when that income, Your Honor, is used to purchase marital assets that both parties end up receiving, I believe that this creates an exception if the court were to construe 1341, that, lack of a better word, narrowly. Does Ohio Revenue Code 3105.171 state that it treats income from labor as opposed to passive income as marital property, each spouse shall be considered to have contributed equally to the production and acquisition of marital property? Does it say that? Your Honor, I'm not sure. What was that you were just quoting? Does Ohio Revenue Code Section 3105.171 state that Ohio treats income from labor as opposed to from passive income as a marital property and, quote, each spouse shall be considered to have contributed equally to the production and acquisition of marital property? And if it does say that, then wouldn't we have to assume under Ohio law that half of the money that Mr. Bluso received from the Staples Company, from Gotham Staple, was, I guess, Ms. Bluso's and any of the priefs? But that is a good point. I think that that would be the situation. But does that make, the question is not whether once it's brought in, she has a claim to half of it as the divorce settlement later apparently indicated, but whether that makes her the taxpayer with an unrestricted right to the item. Just because under Ohio law she has a marital assets claim to it when it comes in doesn't mean that she owes the taxes on it, does it? Well, if you were to look, actually, Your Honor, because they filed a joint return, she did owe taxes on everything her husband made. I realize that she could have potentially filed for an And the separation agreement that was part of the record indicated there were a number of brokerage accounts in real estate that Mr. Bluso's income used to purchase. That was why Mr. Bluso insisted from the beginning that Norm Mihalik should reimburse him for half of the excess income he was either found liable to his sister for or that was settled. And that is exactly what happened. And I realize that statute is fairly narrow in specific, but again, this is not a situation where Ms. Mihalik simply is trying to get a windfall or a tax refund because she was the spouse of someone that earned a lot of money. She actually paid a lot of money and should be entitled to get a refund in my view. I understand the equity of it, but unfortunately the code doesn't, IRC doesn't always walk with equity. Let me ask you this. Do we know, I couldn't find, but do we know from the record who paid the taxes on the joint return? I believe the record would have shown that income was taken out of their Norm Mihalik and Michael Bluso's taxes by or income by the company, Gotham Staple Company. Out of both their incomes? Yes. Okay. Yes, there is nothing in the record, Your Honor, that would indicate that Michael Bluso wrote a separate check or Norm Mihalik did not pay anything. This was taken, I believe, out of their income by their employer. And when you say would have shown, are we in the record on that or is that what you know or believe based on the matters outside the record? Your Honor, that is based on what I believe is in the record. I believe Michael Bluso may have depositioned how he ended up getting W-2 forms, but I don't think the mechanics were discussed in any detail, if they were discussed. Let me ask you this question and it has nothing to do with the legal issues in the case, but for the life of me, I do not understand why your client signed this agreement to pay $300,000 that was incorporated into the divorce decree when she didn't have to do that. Why did she do that? Your Honor, she testified in her deposition that she felt compelled throughout this to do that. Compelled by whom? Her divorce attorney told her that she had no choice and Mr. Bluso testified at his deposition that he insisted that she would have to pay him back 50% of this. Norma Hellick fought this. She did not like it, of course, having to pay $300,000, but her husband or ex-husband, Michael Bluso, was very adamant that if he had to pay $600,000 for excess income, then Norma Hellick, who received a lot of assets that that income purchased, should have some skin in the game, so to speak, and should have to pay that back. Didn't Mr. Bluso also testify at his deposition that if she hadn't been willing to pay it, that he was ready to go to court and he would have litigation to have her pay it? And didn't Ms. Hellick also testify that he had threatened litigation if she didn't enter into the separation agreement requirement? That's correct, Your Honor. His position was not totally frivolous. I mean, if you assume as the divorce settlement agreement did that they owned all their assets jointly and $600,000 came into the marriage, which we know that it did on the taxpaying year, then they both got joint benefit from that and it increased the joint marital assets by that amount. And then when the division came, they should subtract that out because, or after the division came, they should subtract that out because it was no longer, it shouldn't have gone into the joint marital assets to start with. I mean, wasn't that the theory behind his position? Yes, that was Mr. Bluso's theory, and he had very strong opinions on that as was seen with his deposition testimony. And Norma Hellick, if the court recalled, I believe Mr. Bluso paid his sister the $600,000 in late 2007 and early 2008. It wasn't until 2009 that Norma Hellick finally paid $300,000 plus I think another $23,000 to cover some other legal fees or expenses, but she fought that. And the fact that it took her that long to pay indicates that she was very much resisting this. Again, I know this case started at the administrative appeal level, and it seemed that most of the focus at that point was whether this separation agreement was actually voluntary or whether that led to Norma Hellick having to forcibly pay back the money. And again, if the court recalls that there was a lot of money received, Michael Bluso testified in his deposition, he was concerned of having to pay millions of dollars. So a $600,000 settlement for him and a $300,000 reimbursement from Nora was a pretty good outcome. Any further questions, Chief? No, thank you. All right. Thank you, counsel. Thank you, Your Honors, and may it please the court. Norma Hellick's refund claim under 1341 fails for four different reasons, and this court need only reach the first to dispose of the other three, because since the $300,000 payment was not recourse to other relief under Section 1341, and the district court so held. The analysis of where the payment could be traced to her gross income or whether her husband's income could somehow be imputed to her under Ohio law is immaterial to the question of whether this $300,000 is deductible under Section 165C2 of the Internal Revenue Code as a loss incurred in a transaction undertaken for profit. And the district court correctly held that the divorce agreement was not a transaction entered into for profit. She may have felt under some duress in the negotiating process, but she was represented by counsel, and her counsel negotiated this divorce agreement with counsel for her ex-husband. Both of the parties agreed to it. Both of the parties signed it, and both of the parties complied with it. No one is alleging that the agreement was breached in any way. Let me ask you something. Yes. With respect to 162C1, you did argue about that in your brief, right? We did, but we note that the taxpayer did not raise that issue in the district court. But you raised it. I mean, you raised it on appeal as the counter argument to, it's a refutation of the 165C2 because it is refuted. I mean, you agreed that Mr. Bluso was engaged in a trade or business. He was. That's correct. And so that being the case, these were losses that were incurred in the trade or business. They were not her losses, Your Honor. They were Mr. Bluso's losses, right? The settlement of the litigation, we don't have enough facts on this record to make that for his tax refund that he might be entitled to that deduction. Okay. So then the only real question then goes back to one of the other factors, I guess, under 1341, which is whether there's a nexus between her payment, I guess, and the initial entitlement, right? Or the initial apparent entitlement, right? And we submit that the district court correctly found that that nexus was not shown on this record. Why doesn't that, why doesn't Ohio law on how it is that money is attributed, you know, marital income is attributed and viewed, why doesn't that play into it? I mean, clearly, both Mr. Bluso and Ms. Mihalik seem to be under the impression that the income that Mr. Bluso received was equally Ms. Mihalik's and Mr. Bluso's. They paid taxes on it that way. Mr. Bluso testified that she paid taxes on his tax liability and he paid taxes on her liability and they treated it equally. So why would it not, why would there not be that nexus? As Chief Judge Carnes noted, there is a distinction here between income at the time of receipt and the imputation of property rights and marital assets upon dissolution of a marital estate. And the marital property code that Your Honor cited, with which I too was unfamiliar until you cited it, but I think it's important to take it into the context that you read it, each spouse is treated as contributing equally to what? To an estate, to something to be divided. This is in the context of a divorce where you are coming from, let's say, a historical perspective where perhaps both spouses did not historically contribute equally to a body of assets, but a non or a lesser wage earning spouse would have contributed in kind, would have perhaps not had as much wage income outside the home, but have contributed in other fashions. And so the law protected that spouse upon dissolution of the estate. The lesser wage earner was not penalized for having contributed fewer funds to the marital estate upon its dissolution. And there are plenty of policy reasons for that that don't implicate our case. But the actual, the facts here, I mean, yes, he's the one who earned it, right? But they treated it as it was earned by both of them. Ohio law attributes it to being earned by both of them. They paid taxes on it as though it had been earned by both of them. We would take issue with that characterization, Your Honor. Whether or not they commingled their funds is not material for to whom an item of income on a return is attributed under federal law, first point. Second point, how they paid their taxes, again, whether they held their funds commingled in common accounts or who signed the check or who was responsible for the finances, again, does not speak to how income is traced under the federal tax law. 1341, if you go there, requires that an income, an item be included in gross income for a prior taxable year. The item is what matters here, not the eventual property rights. And as Your Honor notes, the divorce decree tracks this Ohio law, legal principle that says each one of you gets 50% of what you made together. That's different from the tax law that says if an item of income was included in gross, the person who later has to restore that income because that payee should not have received it in the first instance is entitled to tax relief, is a distinct principle completely from the disposition of marital assets. And the fact that the Ohio Code speaks of income in terms of an asset should not be with the meaning of an item of income under the federal tax law. Those are two distinct concepts. Let me let me ask you this. What counts is who had to restore it. So you're saying that if she had entered into the settlement agreement with the sister of the husband, that she would be entitled to this, right? Your Honor, if she had been a party to the litigation and she had been accused or it had been somehow determined that she had been excessively compensated, that she had been the recipient of an item of income to which she had not in fact had an unrestricted right when she received it, then when she restored it, she would have a remedy under Section 1341. Well, regardless of theory, if they'd come to her and said, we're going to sue you because you ended up with the money, regardless of who earned it. We're going to trace the money into your path of the marriage and going to sue you for it unless you settle with us. And she had settled under your interpretation. She'd be entitled to that one. No, Your Honor, because a threat of litigation without more does not affect her rights to income earlier received. She had. Whoa, whoa, whoa, whoa, whoa. Why do you have to? Well, why do you why does somebody have to actually sue you? I mean, that's that's not something we want to encourage. Don't work out your differences with a face to face, a good faith negotiation and settle the litigation without filing a lawsuit. You've got to file a lawsuit to get the tax benefit. No, no, Your Honor. And I'm sorry if that if that was expressed. The point is this. She received income originally under a claim of right. She received a paycheck and believed it was all due to her. If she actually had exposure on that, I'm not talking about what you your honor has previously characterized as a frivolous claim against her as a negotiating tactic. But if she, for example, in the in the in the earlier Supreme Court case, Lewis, the gentleman there had received a bonus that had been miscalculated and he was obligated to return some of that. If that had been the case for Ms. Mihalik, if she had been accidentally overpaid and was required to restore income that should not have been paid to her in the first instance, that's different from being a party to litigation and having exposure there. You can't bring someone in to a a suit to call their right to income into question. And I understand I've used that phrasing before and it wasn't clear the first time. So let me try again. She earned income in the first instance and believed it was due to her. If it later somehow became clear that that income was not due to her and she had to restore it to the payor, she would have a remedy under 1341. A threat of litigation does not trigger that right under 1341. Why not? I'm looking at 1341 again and I don't see the no threat of litigation inadequacy rule that you're arguing for. It was established that the taxpayer did not have an unrestricted right. You can establish things through settlement agreements. It was established at the moment of payment of income to her husband that she did not have an unrestricted right to it. So you're saying that regardless of what happens after the husband is paid, she can't qualify for 1341? Not with respect to an item of income initially paid to him. That's correct, Your Honor. And everybody agrees this item of income was initially paid to him. So you're saying no matter what happens, if she and he had been jointly sued under a conspiracy, civil conspiracy theory, or she aided and abetted him in getting more of the money, once the money is paid to her husband at the get-go, 1341 is off the book. That's your position? Because it is income to him. Yes, Your Honor, because it would be his income. But it would not be off the books with respect to him. Now, Your Honor, pause. We're not talking about him. You know that. We're talking about her. Yes, Your Honor. All right. So you're saying that all this, the rest of this doesn't matter. All that matters is who gets the income. Yes, Your Honor. And because in the case— I'm sorry. I think that's the part I'm not understanding. Why does it matter who the paycheck goes to? If they're both paying taxes on it, they're treating it as income of the couple. The state sees it as income of both of them equally. They're paying the settlement back as though it's income on both of them together. Why? Why is it the fact that all that matters is that the paycheck is issued to him? Because under federal property law, or under federal tax law, you owe tax on your income and not your spouse's. I guess I'm asking for you to point me to the provisions of the law that you're relying on. Well, I would go back to the Ohio section that Your Honor cited and say that this does not I'm speaking off the cuff here because I'm not an authority on Ohio state taxation. But I suspect that section 305.171 does not create a community asset out of income at the moment of receipt such that all spouses in Ohio, for example, are presumed to have earned each other's income and items are not declared separately on a state tax return. We're not talking about Ohio tax law. We're talking about, and I noted your slip of the tongue, federal property law. We're still looking for that. Well, I'm not positing a federal property right here, and I apologize for the misstatement. I understand. But my point is, and the reason I mentioned that, is unrestricted right. What defines the right? What law defines the right? It's not, I would submit, federal income tax law. It's state property tax law. I would agree with that statement. And the provision that Judge Rosenbaum has cited seems to me to say that under Ohio property law, this taxpayer had an unrestricted right to such item, or at least to half the item. Now, what's wrong with that reason? Um, I believe it's not correct, but I am not. That would indicate there's something wrong with it. I'm unprepared to speak to Ohio law. It has not been briefed. It is not an issue that the taxpayer raised below or in her briefs, and it is not an issue that we have thus responded to before this moment. But you all relied on Ohio law in some of your arguments. I mean, that's what made us look in the first place. We did, and we relied on Ohio law looking at how, whether it's a community property state or an equitable division state. Because in the case of a divorce, you're dividing assets, and assets can include income strains. And thus, you'll find in asset division statutes, discussion of income. But we would suggest that this provision, and I'm afraid to make too broad a statement without adequate information here, but my strong suspicion is that the domestic code and the provisions of state law that deal with the disposition of assets are not controlling as to the original property rights of a recipient of income. And I can't say more on that, on the information in my possession at this time. All right. So what you're saying is I understand it. I'm asking this for clarification. It is that the right that counts is not the right after it's received, but the right to receive it to begin with. That's correct, Your Honor. That's correct. Let me ask you this, the word taxpayer in 1341A1, is that talking about the taxpayer who later filed the claim or the taxpayer who filed the original return? The reason I'm asking is, to the extent that you have taxpayers plural in the joint return, which it would seem you do, is that what counts? Or is it the taxpayer singular after the divorce, individual return, who's filing the claim for a deduction? It is the taxpayer who has received the item of income, Your Honor. The statute is phrased, and the statute doesn't contemplate multiple taxpayers filing jointly or a consolidated corporate return. It looks particularly at an item of income attributable to a particular taxpayer. Well, who is the taxpayer in a joint return? With respect to each item of income, the person who earned it. The parties are jointly liable, but the federal law does not impute income of one taxpayer to another merely by virtue of a joint filing. A joint return can obligate both spouses, but need not necessarily, and we speak to that in our brief as well. Taxpayers' Council acknowledged that there is availability to an innocent spouse under the federal tax law. That person who, for example, files jointly with a spouse, and it is later determined that the spouse, who may have been the greater wage earner, was committing some sort of misdeed. The non-liable spouse is able to obtain innocent spouse protection and is not as excused from liability for the tax obligation on that return, despite having filed jointly. The misdeed is not imputed to the innocent spouse any more than the income. Why shouldn't that be the same here? Why shouldn't that be the same here? It is. That is the case here, Your Honor. No one is imputing the misdeed to Ms. Mihalik. Ms. Mihalik entered into a settlement agreement on a claim that she was not accused of. She agreed to indemnify her ex-husband for litigation to which she was a non-party and in which she was accused of no wrongdoing. The indemnification agreement was voluntary and negotiated on the council. So what you're saying is, the way they should have handled this, if you were out of government service advising them as their tax counsel, they should have just had the husband file for $600,000 deduction and then have an agreement between he and the wife that he would work that out with her. He would have been entitled to the entire $600,000, right? He would have a strong claim in that direction, Your Honor. Well, he got, I don't want to say away with it or buy it or whatever, but he got that deducted $300,000. There's no reason he couldn't have gotten $600,000 unless it would have raised some red flags that $300,000 did not. It appears that way on this record, Your Honor, although we don't have his amended return and his personal information is protected under 6103. We can't look. We don't know. But based on what he said, it appears that he did claim a deduction for the settlement payment. And there is authority in this circuit that says that a settlement payment like that is deductible. But an indemnification agreement of a third party is not. And that's what the district court hung its hat on here, unless it's considered involuntary. And we have said that it could be considered involuntary if there would have been litigation. I mean, it seems to me that our case law supports the idea that it could have been considered involuntary if there would have otherwise been litigation. I, without disputing that point, Your Honor, I would question whether the risk of frivolous litigation, where there has been no previous suggestion of wrongdoing in order to coerce an indemnification agreement. In other words, the plaintiff in that litigation had no claim against Ms. Mihalik. Only the defendant in that litigation had a putative claim against her. And now this is a defendant who previously has shared everything with her. What claim could that be? What excess compensation or what other claims of, tort claims by the company? I'm positing that this Ohio litigation is in the nature of a shareholder derivative suit by a member of the family operating this closely held corporation, the sister. The sister had claims against the relatives running the company. She did not have claims against Ms. Mihalik paying the taxes here. Do we know that? I mean, I'm not familiar with Ohio law and that sort of thing. We know that she was not named a party and... That doesn't mean they didn't have a claim against her. It means they didn't attempt to assert one. It's unclear what role Ms. Mihalik played in the company. I think the record reflects that she had a very limited professional role and that consisted primarily of event planning. I don't believe that this record reveals that she was a major stakeholder or involved in the management of the corporation. I don't believe she had any involvement in the determination of payroll or compensation as did the parties who were accused of wrongdoing with respect to compensation. Did you have anything further? No, thank you. Thank you, counsel. If I could, I would just like to make a very simple statement about this substantial nexus. That it seems the IRS is looking at each of these separate circumstances as separate ones. All of this liability that Nora Mihalik potentially would have had but the money that she had to pay back, this did not flow from a separation agreement in a divorce case by itself. It was not isolated. It was all part of that original income earning which was excessive. And I would just like to state that it's indicated that the word circumstances, plural, is used by this court and some of the cases that established that substantial nexus requirement uses circumstances, plural. And that's exactly what happened. It did happen over a number of years. But again, had Michael Blusow not taken what his sister felt was excessive compensation Nora Mihalik never would have lost $300,000 in assets, stockbroker accounts, or whatever. That I don't have anything else. If anyone has any questions, I'd be glad to answer. Keith, do you have anything? No, thank you. Thank you both. Thank you. We'll be in recess.